COMEY & JOHNSON CO. v. UNITED STATES (No. 742).[1]

HATTERS' PLUSH, WHEN ASSESSABLE AS SILK PLUSH.

It is clear that paragraph 477, tariff act of 1909, must be taken to refer specifically to material used exclusively for making men's hats. The intention was to encourage the domestic production of men's hats. The proof shows the importation was made for the manufacture of millinery goods or women's hats, and that it was so used. It was not entitled to the benefit of the paragraph named, and it was properly assessed as a silk plush.

United States Court of Customs Appeals, February 1, 1912.

APPEAL from Board of United States General Appraisers, Abstract 26178 (T. D. 31774).

[Affirmed.]

A. A. Stearns for appellant.

Wm. L. Wemple, Assistant Attorney General (Thos. J. Doherty on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This controversy turns upon the construction to be given paragraph 477 of the tariff act of 1909, which is in the following language:

477. Plush, black, known commercially as hatters' plush, composed of silk, or of silk and cotton, such as is used exclusively for making men's hats, 10 per centum ad valorem.

The importation in question was assessed under the provisions of paragraph 399 of the same act at the rate of $2.40 per pound, or about 60 per cent ad valorem, as a silk plush.

Many of the difficulties in this inquiry are overcome, and light shed thereupon, by the ascertainment of the intent of Congress in the enactment of the paragraph in question.

It is indispensable to a correct understanding of a statute to inquire first, What is the subject of it, what object is intended to be accomplished by it? Lewis's Sutherland Statutory Construction (vol. 2, sec. 347).

A comprehensive view of the entire act, and the comparison of this paragraph in relation to other paragraphs of the act, unmistakably disclose the intent of the Congress in the enactment of the particular paragraph. In every other provision of the act, relating to silk goods and manufactures of silk, no less a rate of duty than 35 per cent ad valorem is provided. In the particular paragraph an especially low rate of duty of 10 per cent ad valorem is provided. This rate of duty is of the lowest rates exacted upon imported merchandise, and is one customarily fixed by Congress upon very crude raw materials which are to be used in the manufacture of other wares. In any event, the comparatively low rate of duty here exacted upon a class of merchandise which otherwise is uniformly assessed at exceptionally high rates of duty indicates beyond doubt the intention

---

[1] Reported in T. D. 32253 (22 Treas. Dec., 251).

of Congress to foster the particular industry using such importations in its manufactures. Measured by this incontestable rule, the intent of Congress in the enactment of the particular paragraph was to favor the men's black silk hat industry in this country, and to supply it with an exceptionally cheap raw material consisting of a high grade of goods.

In that view the intent of Congress to limit the phrase "such as is used exclusively for making men's hats" to those made in this country and not abroad becomes perfectly apparent. If it were the intent of Congress in this provision to upbuild the silk-hat industry in this country any other construction of that sentence in the paragraph than one limiting its scope to this country would defeat the intent of Congress as here manifested.

We think that the limiting phrases of the paragraph, (1) "known commercially as hatters' plush," and (2) "such as is used exclusively for making men's hats," are not difficult of interpretation. They require that imported articles receiving the benefit of being assessed for duty under this provision must be known commercially as hatters' plush, which is admittedly true in this case, and must be such as in this country are exclusively used in the manufacture of men's black silk hats. The latter provision does not seem to have been satisfied by the testimony in this record. The goods were imported by a house devoted to the manufacture of millinery goods, or women's hats, and were admittedly used for that purpose. Indeed the controversy really turns upon and was directed to the point whether or not this imported merchandise could in any case be used in the manufacture of men's black silk hats in this country. Weighing this evidence carefully we would be inclined to make a finding against the importer upon that point.

While it may be true that the incidental use of a black silk plush made and adapted exclusively for use in the manufacture of men's black silk hats in this country for some other purpose would not defeat the right to the benefits of this paragraph, it nevertheless must be true that in order to come within purview thereof it should at least be necessary that it should not be made and imported for another entirely distinct use, as is disclosed by the record with reference to the particular importation.

The manifest intent of the Congress to subserve this single industry makes plain the purpose of the language employed. It is the men's black silk hat industry, and no other industry, that is to receive the benefit of this provision, and whenever it is disclosed by the record that the importation is an article used by another industry than this the case is not made which entitles the importer to the benefit of this provision of the law.

The decision of the Board of General Appraisers is *affirmed.*

CONCURRING OPINION.

BARBER, Judge, concurring:

I concur with the result reached by the court in this case. I do not, however, in all respects agree with the interpretation it places upon paragraph 477.

Assuming that a purpose of the paragraph, as stated by the court, is "to favor the men's black silk hat industry in this country and to supply it with an exceptionally cheap raw material consisting of a high grade of goods," I think that purpose is accomplished by holding that such black plush articles, composed of silk, or of silk and cotton, as are commercially known in this country as hatter's plush are entitled to the low rate of duty provided in the paragraph, if it also appears that they are of the character and standard exclusively used in the manufacture of men's hats. If, however, at the time the law was enacted, or later, it is found that such a commodity may be devoted to other purposes, it is also still entitled to the same benefit. In other words, I think the law is this: If such plush is the only kind used for making men's black silk hats in this country it may be used for other purposes and still be dutiable under paragraph 477.

The construction given the paragraph by the court would, it seems, make it necessary that the importation should be devoted to the manufacture of men's black silk hats only, which involves the further necessity of following each importation to its ultimate use in manufacture in order to correctly determine the rate of duty.

It is just as reasonable, I think, to suppose that Congress designed to protect any other industry which used this kind of plush as the silk-hat industry, and therefore that the language of the paragraph is descriptive of the plush and means plush of the kind that is used in the manufacture of men's hats to the exclusion of other similar fabrics, and I see no reason why it is to be presumed that Congress intended to give the men's hat industry a monopoly of importing the plush at the low rate of duty. Establishment of new industries might thereby be prevented, which, as I view it, is not the policy of the law or the intent of Congress in the enactment of the paragraph in question.

The history of previous legislation on this subject and its interpretation by the Board of General Appraisers seems to sustain the interpretation which I would give to the statute.

Paragraph 593 of the act of 1894 admitted to free entry—

593. Plush, black, known commercially as hatters' plush, composed of silk, or of silk and cotton, and used exclusively for making men's hats.

In T. D. 16577, the Board of General Appraisers had before it the interpretation of this paragraph. It held, and I think properly,

that thereunder exclusive use was the test, and it appearing that the merchandise there involved was not exclusively used for making men's hats, that it was not entitled to the benefit of free entry. See also T. D. 15825.

Paragraph 461 of the act of 1897 was made to read—

461. Plush, black, known commercially as hatters' plush, composed of silk, or of silk and cotton, such as is used exclusively for making men's hats, ten per centum ad valorem,

and this identical language was preserved in the paragraph now before the court.

In T. D. 25381, construing the paragraph of 1897, the Board of General Appraisers had before it goods invoiced as half silk plush. The case as reported does not show for what purpose the merchandise was imported. The board said the testimony showed that there were low grades of hatters' plush that are not used exclusively for making men's hats, but that the importations involved were such plush as is exclusively used for making men's hats and sustained the protest. In other words, without any evidence as to the purpose for which the merchandise was to be used the board held it fell within the class of that used exclusively for making men's hats.

In T. D. 30791 the board again considered this paragraph. The merchandise was a black plush, concerning which the board said:

The testimony taken at the hearing shows that it is known commercially as hatters' plush, and is such a plush as is used for making men's hats.

The evidence further showed that the merchandise was used in making women's hats in exceptional cases. In its conclusion the board used this language:

In the act of 1894, as well as in the act of 1890, Congress limited the provision to plushes known commercially as hatters' plush and used exclusively for making men's hats. We think it was the intention of Congress by thus changing the language of the paragraph to enlarge the provision so as to include within its terms such plush as is known commercially as hatters' plush, and is recognized in the trade as a standard article which is used in the manufacture of men's hats to the exclusion of other similar fabrics.

I think this indicates the true interpretation to be given to the paragraph under consideration. If Congress designed in the act of 1897 to limit the plush which was entitled to the low rate of duty to that which was to be exclusively devoted to the making of men's hats it was unnecessary to change the language of paragraph 593 of the act of 1894, except to add the duty provision. Instead of doing this it used the language "such as is used," and I think thereby, as the board said in its decision last above quoted, enlarged the provision.

The construction which this court now gives to the paragraph negatives such enlargement and construes the same as if it read,

"and exclusively used," or "if exclusively used," either of which expressions would be precise and apt language required to warrant the construction now given it, and neither of which is used.

I do not lose sight of the fact that in the decision of the board last above referred to it also said that because the plush was used on rare occasions for other purposes it was not thereby excluded from the classification given to it. But this language does not diminish the force of their reasoning as to the effect of the paragraph and was doubtless induced by the facts in that particular case.

In its decision in the case at bar the board again reiterated its former conclusion that "to bring the merchandise within the provisions of the paragraph it must be shown that the article is commercially known as hatters' plush and is recognized in the trade as a standard article which is used in the manufacture of men's hats to, the exclusion of other similar fabrics." Congress will be presumed to have retained in the present act the language of the paragraph in the act of 1897 in view of the foregoing interpretation.

One of the arguments set forth in the Government's brief in this case is here quoted:

Experience has shown that it is impracticable to follow imported merchandise into consumption for the purpose of fixing the rate of duty it shall pay; that is to say, to postpone the final ascertainment of the duty until the merchandise has been consumed. Nothing was more natural than that a change in the statute should be made, which, while restricting the privilege of entry at 10·per cent to black hatters' plush used in the men's silk-hat industry, clarified the statute by ridding it of a condition that was impossible or impracticable of performance. In other words, the effect of the change was to substitute for proof that a given consignment of plush was actually used, or to be used, in the manufacture of men's hats, proof that the plush was of the same kind or quality or fitness of plush that was selected by the makers of men's hats for their purpose; or, putting it in another way, that the plush was "such as is used exclusively for making men's hats." This last quoted phrase undoubtedly fixes a standard of use by which to classify for duty black hatters' plush, and the determination·of whether or not a plush is of this standard necessarily involves consideration of its character, quality, and fitness for the making of men's hats.

Men's silk hats are made only of certain grades of plush, and these grades, and the character and quality they imply, are well established and known in the trade. If, as appellant urges, paragraph 477 is satisfied if the plush be black hatters' plush, why were the legislators so particular to specify "such as is used exclusively for making men's hats?" Why should this restriction be inserted, if the intention was to include plush used for women's, misses', and children's hats as well? The statute definitely says for making men's hats, and this is a fairly clear indication of an intent to include only the plush that possesses the necessary characteristics, quality, and fitness for that purpose, and to exclude all plush which does not possess these necessary properties.

The above, as I understand, is the gist of the Government's main contention and is also in accord with the views I hold as above expressed as to the interpretation of the statute.

In its opinion I think the court goes further than the Government contends· and further than the decision of the case requires. The

opinion seems to lose sight altogether of the fact that by the use of the words "such as" Congress designedly enlarged the paragraph which, before these words were inserted, made ultimate use the test, and which, in its quoted argument, the Government concedes was impossible or impracticable of performance. By the use of the quoted words, as the Government also contends, the statute was enlarged to include all plush which is of the standard, character, quality, and fitness for the making of men's hats. In other words, the majority opinion gives no force whatever to the words "such as," which to my mind must be given a descriptive effect and were used in the sense of *the kind* that is used, or else be held meaningless.

Therefore, while I concur, as stated, in the decision of the court for the reason that the evidence fails to establish that the merchandise involved is of the character that is used in the manufacture of men's hats to the exclusion of other similar fabrics, nevertheless I feel constrained to dissent in this manner from the interpretation which the court gives to the paragraph and which I think is misleading and may be embarrassing in the future.